[No. 26049. Department Two. March 20, 1936.]

GENERAL MOTORS TRUCK COMPANY *et al., Appellants,* v. LLOYD F. PEARSON, *as Administrator, Respondent.*[1]

'Reported in 55 P. (2d) 616.

*Charles F. Riddell,* for appellants.
*McAulay & Freece,* for respondent.

BEALS, J.—During the month of October, 1934, General Motors Truck Company, a corporation, sold, by contract of conditional sale, a truck and trailer to Kenneth C. Underwood, of Yakima. The vendor immediately assigned to Yellow Manufacturing Acceptance Corporation its interest in the contract and the property covered thereby, guaranteeing to its assignee the payments to be made by Mr. Underwood, who, as part of the same transaction, insured the truck and trailer, by a policy written by the Columbia Fire Insurance Company of Dayton, Ohio, protecting the property, *inter alia,* against loss or damage from collision, to the amount of the cash value of each vehicle, in excess of one hundred dollars. By the terms of the policy, loss, if any, was payable, ''as interest may appear, to assured and Yellow Manufacturing Acceptance Corporation.''

Mr. Underwood made the November payment due under his contract, and on the last day of that month, while the contract was in good standing, was killed in an accident in which the truck and trailer were badly damaged. Thereafter, Lloyd F. Pearson was appointed administrator of the Underwood estate, and upon his qualification as such, the administrator furnished proof to the insurance company, claiming a total loss. Under the terms of the policy, a controversy arose between the administrator and the insurance company, with which we are not here concerned. It was finally agreed that the insurer should pay into the registry of the court $2,283.26, in full settlement of its obligations. This sum is still intact, awaiting de-

termination of this action, which was instituted against the estate and the insurance company May 20, 1935. The insurance company was later dismissed from the action.

In their complaint, plaintiffs alleged the ownership of the truck by the General Motors Truck Company; the sale to Mr. Underwood by contract of conditional sale, reserving title in the vendor until payment of the purchase price; that, under the contract, no damage to the property sold should release the purchaser from liability on his contract; and that the contract had been assigned to plaintiff Yellow Manufacturing Acceptance Corporation. The complaint further alleged the insurance of the property, as above set forth; that a controversy with the insurance company was pending; that the estate of Kenneth C. Underwood was insolvent; and that, because of the position taken by the administrator, plaintiffs were threatened with loss of the proceeds of the insurance policy, which they were entitled to receive.

A few days after the institution of the action, plaintiffs filed with the administrator their creditor's claim, based on the conditional sale contract covering the truck and trailer. A copy of the contract was attached to the claim, the claim stating the sale, the issuance of the insurance policy, the damage to the property, and that plaintiffs claimed the amount due under the policy up to the balance due on the contract of conditional sale. The administrator promptly approved the claim and presented the same to the court, which allowed it in the full sum of $2,447.20.

In his answer and cross-complaint, the administrator pleaded the presentation and allowance of this claim, relying thereon as an election on the part of plaintiffs to waive all right to the proceeds of the insurance policy. Prior to trial, the plaintiffs and the

administrator stipulated in writing that the only controversy between the parties was as to the legal effect to be given to the filing, allowance and approval of plaintiffs' claim against the Underwood estate, and that judgment should be rendered by the court determining this question and the ownership of the proceeds of the insurance policy then and now in the registry of the court. This question of law was argued to the court, and thereafter judgment was rendered in favor of the administrator, dismissing the action and directing that the proceeds of the insurance policy be turned over to the administrator of the Underwood estate. From this judgment, plaintiffs have appealed.

Under the contract of conditional sale, title to the property covered thereby was reserved in the vendor. Time was made of the essence of the contract, and upon default the vendor could, at his option, declare the entire amount remaining unpaid immediately due, or declare the contract void, take possession of the property, and retain all payments made as liquidated damages. Construing similar contracts, this court has repeatedly held that the vendor may not retake possession of the property, forfeit the payments made, and at the same time hold the purchaser for the unpaid balance of the purchase price.

Respondent contends, and the trial court held, that, by filing the claim with the administrator of the Underwood estate, appellants elected to hold the personal representative of the vendee for the balance of the purchase price, and thereby waived its claim against the insurance policy or its proceeds. In this connection, respondent relies upon the cases of *Winton Motor Carriage Co. v. Broadway Automobile Co.*, 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71; *Goldstein v. National Fire Ins. Co.*, 106 Wash. 346, 180 Pac. 409; *Kimble Motor Co. v. Androw,* 125 Wash.

225, 215 Pac. 340; *Weber Showcase & Fixture Co. v. Waugh,* 42 F. (2d) 515.

In the claim filed, appellants alleged the execution of the contract of conditional sale, the delivery of the property pursuant thereto, the total purchase price to be paid therefor, that the same was to be paid in monthly installments commencing November 19, 1935, that the purchaser procured a policy of insurance pursuant to the contract, the making of the November payment by Underwood, the damage to the property, that the insurance company admitted a considerable liability under its policy, the assignment of the contract by the vendor to the Yellow Manufacturing Acceptance Corporation, and that the amounts due on the insurance policy were payable to the claimant up to the amount of $2,447.20. The claim was verified June 1, 1935, and showed that the payments, commencing with that due December 19, 1934, were unpaid.

Respondent strenuously contends that the filing of this claim and its approval by the administrator and allowance by the court terminated appellants' interest in the personal property covered by the conditional sale and the proceeds of the insurance policy covering the same, as any claim on behalf of appellants to the insurance money must depend on their interest in the property insured, the policy protecting them merely as their interest may appear.

In the case of *Dysart v. Colonial Fire Underwriters,* 142 Wash. 601, 254 Pac. 240, it was held that a vendor under a contract of conditional sale, protected by an insurance policy providing that the proceeds thereof should be paid to the vendor as his interest may appear, upon the destruction of the property by fire,

" . . . was entitled to receive the unpaid balance of the purchase price out of the insurance money, and no more, because that payment would extinguish its interest in the subject-matter of the contract, and

thereafter the remainder of the insurance money and the property remaining undestroyed would belong to the vendee, and it could maintain an action to recover the money and to compel the delivery of a deed which would vest the title in it; provided, always, of course, that the contract was in good standing and had not been forfeited. There is no question here but that at the time of the fire the contract was in good standing. No attempt was made to forfeit it for some four or five months after the fire. . . .

"By the simple terms of the contract the parties have provided for insurance and provided how the money arising therefrom should be distributed. Hence, when the fire occurred, their rights became fixed. The vendor was entitled to be paid the balance of the purchase price, without regard to the maturities named in the contract, as and when the insurance money should be collected, and it had no other or further rights, and hence could not declare a forfeiture."

In the late case of *North Pacific Public Service Co. v. Clark, ante* p. 132, 52 P. (2d) 1255, a question very similar to that here presented was considered. It appeared that the vendor under a contract of conditional sale presented to the administrator of the estate of one of the vendees who had died a claim stating the entire balance due under the contract. One of the other vendees had become insolvent, and later the vendor settled with the administrator of the estate of the deceased vendee and the third vendee, taking from them assignments in which it was provided that the release of the two vendees should not operate to discharge the third vendee, the insolvent corporation, from any of its obligations under the contract, the vendor expressly reserving all its rights. At the time the claim was filed against the estate of the deceased vendee, the contract was not in default, and there was no sum due and payable thereunder.

In an action thereafter brought by the vendor, seeking to declare a forfeiture of the contract, the unre-

leased vendee claimed that the facts above recited operated in law to release it from its obligations under the contract, contending that the filing of the claim operated as an election to hold the vendors for the agreed purchase price and an abandonment of all right to declare a forfeiture. In discussing this phase of the case, this court said:

"The other question presented is whether the filing of the claim was an election to rely upon the personal responsibility of the obligors and thus waive the right of forfeiture which was contained in the contract. The doctrine of election of remedies has no application when the relief sought is not available. The remedy is not available when there is a good defense to it. *Babcock, Cornish & Co. v. Urquhart,* 53 Wash. 168, 101 Pac. 713; *Morton Organ Co. v. Armour,* 173 Wash. 462, 23 P. (2d) 887, 27 P. (2d) 887.

"When the claim in this case was filed, nothing was due on the contract, and nothing would become due for months afterwards. The personal liability was then contingent upon whether the contract should be carried out according to its terms. It was necessary, within the time provided for the filing of claims, for the respondent to present a claim or forfeit his rights to hold the makers of the contract on their personal liability. At the time the claim was filed, it could not work an election because, there being nothing due on the contract at that time, there was a good defense to it.

"The appellant's contention in this regard is 'based squarely upon the case' of *Kimble Motor Car Co. v. Androw,* 125 Wash. 225, 215 Pac. 340, as stated in his brief. But that case is different. There, at the time the claim was presented against the estate of the deceased, the vendee, the payments upon the contract were in default. There, at the time the claim was filed, two remedies were open to the claimant, and by the filing of the claim he elected to pursue that one. Here, as already indicated, when the claim was filed, that remedy was not available, and the liability at that time was only contingent."

The case last cited is controlling here. At the time of the damage to the truck and trailer, the contract was in good standing, no sum being due and payable thereunder. The parties having by their contract provided for insurance and the distribution of the proceeds of the policy of insurance upon the occurrence of a loss, under the *Dysart* case above cited, when a loss occurred the rights of the parties became fixed, and the vendor was entitled to receive the balance of the purchase price, and had no other or further right.

Under the circumstances of this case, appellants, by filing the claim in the manner and form which they adopted, did not waive their rights to claim the proceeds of the insurance policy. The approval of the claim by the administrator and its allowance by the court did not change the situation.

The facts of this case fall within the rule laid down in the cases cited by appellants, not those relied upon by respondent, and the trial court erred in ruling that appellants were not entitled to receive from the proceeds of the insurance policy the balance of the purchase price of the property.

The judgment appealed from is accordingly reversed, with instructions to enter judgment in favor of appellants.

MILLARD, C. J., BLAKE, MAIN, and HOLCOMB, JJ., concur.