[No. 34074.   Department Two.   May 31, 1957.]

EFFIE HARP, *Appellant,* v. AMERICAN SURETY COMPANY OF NEW YORK, *Respondent.*[1]

[1]Reported in 311 P. (2d) 988.

*Venables, Ballinger & Clark,* for appellant.

*Lewis L. Stedman,* for respondent.

HILL, C. J.— ██ QUAERE: Where a supersedeas bond on appeal from the superior to the supreme court requires that the principal on the bond

"... shall satisfy and perform the judgment or order appealed from, in case it shall be affirmed, and any judgment or order which the said Supreme Court may render or make, *or order to be rendered or made by said Superior Court.* . ." (italics ours)

is the surety liable for the failure of the principal to make payments as directed by the superior court on a remand after a reversal of the decree or judgment appealed from, where the determination of whether any payments are to be made, and, if so, the amount thereof was left to the discretion of the superior court by the supreme court's opinion and the judgment entered on the appeal?

ANSWER: The surety is not liable.

. FACTS WHICH RAISE THE ISSUE: David Harp commenced an action for divorce against Effie Harp on the ground that the parties had lived separate and apart for five consecutive years or more. Mrs. Harp cross-complained for separate maintenance. The superior court dismissed the divorce

action and granted relief as prayed for in Mrs. Harp's cross-complaint and directed Mr. Harp to pay her one hundred dollars per month, commencing December 15, 1952, and awarded her attorney fees in the amount of one hundred and fifty dollars.

Mr. Harp appealed and the American Surety Company of New York, a corporation, became his surety on a supersedeas bond in the amount of one thousand dollars. On the appeal, this court reversed the superior court and, by its opinion, directed: the entry of a decree awarding Mr. Harp a divorce; the dismissal of Mrs. Harp's action for separate maintenance; and that the superior court "reopen the case and determine the questions of property division, alimony, and attorneys' fees." *Harp v. Harp* (1953), 43 Wn. (2d) 821, 264 P. (2d) 276.

The judgment entered by this court on the appeal provided that

". . . the judgment of the said Superior Court be, and the same is hereby reversed and the cause remanded with directions to proceed as the opinion directs. . . ." Supreme Court Journal, Vol. 41, p. 110.

The cause was reopened by the superior court, and a divorce was granted to Mr. Harp, as directed, July 16, 1954. The divorce decree provided in part that Mr. Harp pay Mrs. Harp the sum of one hundred dollars per month, commencing December 15, 1952, "in accordance with the order heretofore entered as support and maintenance of the defendant, to continue until April 23, 1954," and thereafter he was to pay her fifty dollars per month as a continuing obligation and, in addition, he was to pay to her attorneys five hundred dollars for their services.

There was no appeal from this decree, and no payments were made as directed therein. Mrs. Harp sued the American Surety Company on the supersedeas bond to recover the full amount of the liability thereunder, *i.e.,* one thousand dollars. The trial court sustained a demurrer to her complaint. Thereafter an order of dismissal was entered and from that order she appeals.

■ REASONS FOR THE ANSWER GIVEN: It is obvious that reversal of a money judgment, without more, terminates the liability of a surety on a supersedeas bond on the appeal. *DeVries v. United Employers' Corp.* (1941), 309 Ill. App. 639, 33 N.E. (2d) 728; Arant on Suretyship § 61, p. 216.

■ It is equally obvious that where an appellant secures a reversal, and the supreme court directs the superior court to enter a judgment in a different but certain amount, or to enter a specified order which leaves no discretion in the superior court, that, under the italicized language quoted from the supersedeas bond as set forth in the QUAERE, the surety is liable up to the amount of the bond if the principal fails to pay the judgment or obey the order entered by the superior court. Such a judgment or order is one which, in the language of the bond, the supreme court has ordered "to be rendered or made by said Superior Court." *Tuttle v. Irvine Const. Co.'s Receiver* (1936), 262 Ky. 361, 90 S. W. (2d) 359; *Empson v. Fortune* (1918), 102 Wash. 16, 172 Pac. 873.

■ The mandate of this court is binding on the superior court, and must be strictly followed. If the superior court fails to enter the judgment or order as directed by the remittitur, it could be compelled to do so. *Garrett v. Dailey* (1956), 49 Wn. (2d) 499, 304 P. (2d) 681; *Tucker v. Brown* (1944), 20 Wn. (2d) 740, 150 P. (2d) 604; *Morton Organ Co. v. Armour* (1934), 179 Wash. 392, 38 P. (2d) 257; *Frye v. King County* (1930), 157 Wash. 291, 289 Pac. 18.

■ If the superior court entered the judgment or order as directed, there could be no appeal therefrom, because it is actually the judgment of the supreme court and the superior court is merely the supreme court's instrumentality for the entry of the order of judgment. *Tucker v. Brown, supra; Frye v. King County, supra.*

The superior court was given a mandatory direction to dismiss the separate maintenance action and to grant Mr. Harp a divorce. It was then to consider (*i.e.*, exercise its discretion), "as to property division, alimony, and attorneys' fees."

The distinction between what the superior court was obligated to do without the exercise of any discretion and the area within which it could exercise its discretion is clear. It is that exercise of discretion which is the distinguishing feature between this case and *Empson v. Fortune, supra.* In that case, the supreme court left no discretion to the superior court; here the superior court was directed to exercise its discretion "as to property division, alimony, and attorneys' fees," and when it did, it was, so far as the payments and attorneys' fees were concerned, an entirely new judgment and subject to appeal on every issue where discretion had been exercised.

■ It necessarily followed that when the decree—granting Mrs. Harp separate maintenance—was reversed, the payments directed as separate maintenance and attorneys' fees therein were a nullity and could not be enforced.

■ The order in the divorce decree of July 16, 1954, directing payments by Mr. Harp, represented an exercise of discretion by the superior court and was not a judgment or order which the supreme court had "ordered to be rendered or made." Consequently the surety was not liable in the event of Mr. Harp's failure to make the payments directed by the divorce decree.

DISPOSITION OF THE CASE: The judgment dismissing the action by Mrs. Harp against the surety company is affirmed.

SCHWELLENBACH, DONWORTH, ROSELLINI, and FOSTER, JJ., concur.